UNITED STATES of America,
Appellee,

v.

Jesse S. BAGGETT, Appellant.

No. 72–1548.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1972.

Decided June 19, 1973.

John M. Bray, Washington, D. C. (John R. Risher, Jr., and Arent, Fox, Kinter, Plotkin & Kahn, Washington, D. C., on brief) for appellant.

Russell T. Baker, Jr., Asst. U. S. Atty. (George Beall, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

PER CURIAM:

The defendant, Baggett, and Ralph D. Rocks were jointly charged with a violation of the Travel Act.* Specifically, they were charged with causing the interstate movement of a $3500 check drawn by Rocks in the District of Columbia which Baggett used in Maryland to purchase a tractor for use on his farm. Baggett, first tried after a severance, was convicted.

From 1954 until he resigned in 1970, Baggett was a member of the Board of County Commissioners of Prince George's County, Maryland. From December 1964 until his resignation, he was

* 18 U.S.C. § 1952 and 18 U.S.C. § 2.

the Chairman of that Board. The Board had final authority over all zoning matters and proceedings.

Rocks was a prosperous builder and developer, based in the District of Columbia. Between 1962–1968, he was a frequent applicant for variances and zoning changes in Prince George's County, Maryland. Typically, he sought increased population density rulings and other changes which would enhance the value of lands he had acquired for development and their development potential. His applications usually received favorable action by the Board of County Commissioners until Baggett learned of the governmental investigation of his receipt of the check mentioned above and his use of it for the purchase of the tractor.

The check was made payable to the implement dealer, but the testimony showed that the check came into Baggett's possession in Maryland, that he took the check to the implement dealer and used it to pay for the tractor Baggett had selected. There was some effort on the part of the defense in Baggett's trial to show that the tractor was used only infrequently on Baggett's farm, but there was abundant evidence to support a finding that it was maintained on that farm and used regularly, or exclusively, there until the matter came under investigation.

The Government's evidence did not show a specific *quid pro quo* from Baggett to Rocks in return for the $3500 check. It did show a course of conduct of favors and gifts flowing from Rocks to Baggett. These included trips to Florida for Baggett and a William Stevens, who was in a position to expedite zoning applications on their way to the Board of County Commissioners. It included a check made to cash, drawn by the Maryland zoning attorney for Rocks, which found its way into Baggett's checking account, though, after inquiry, it was claimed that that check represented a loan, and a like amount was repaid by Baggett to the lawyer.

The proof also showed receipt by Baggett of favors from others who had received favorable zoning rulings. After one such ruling, a man in the construction business built an addition to Baggett's house, while another in the paving business paved a road on Baggett's farm. Baggett was billed for neither and paid for neither. Baggett had been tried in a state court for the acceptance of the addition to his house, but the charges were thrown out on the ground that the bare fact of no billing and nonpayment was insufficient to show evil intent.

■ One of Baggett's contentions on this appeal is that the references to the house addition violated the double jeopardy principle. He was not being tried for that, however, and the Government was entitled to show a whole succession of such events, which, by their pattern, would warrant the inference of evil intention, which focus on the single event of the house addition did not.

■ The many instances of favors and gifts accepted by Baggett from Rocks and others receiving favorable rulings from the Board of County Commissioners were ample to show Baggett's corruption by the unprincipled greed of a wealthy man and Baggett's preference for favors and gifts over his public duty. The jury was clearly authorized to draw the inference and conclusion that the $3500 check represented a payment by Rocks to Baggett for continuing favorable zoning rulings.

After consideration of all of Baggett's claims of trial error, we find none affecting his substantial rights or the fairness of the trial. His conviction will be affirmed.

Affirmed.